L. E. ALEXANDER, Respondent, *v*. W. S. RELFE, Appellant.

June 1, 1880.

1. A receiver in chancery is the custodian of property taken in charge by the court.

2. A receiver cannot sue for damages for waste or injury to property not in his possession, except by order of court, and then not in his own name.

3. When the decree appointing the receiver authorizes him to sue for all the

assets of the defunct corporation, this confers no authority to sue in his own name for damages for a fraudulent waste of the assets.

4. There is no statutory authority for the receiver of an insolvent insurance company to bring an action in his own name for damages against another corporation for fraudulent conspiracy to waste the assets of the insolvent company.

5. Stockholders and policy-holders of an insolvent insurance company, who have been defrauded by collusive contracts to which the company was a party, may sue for damages therefor, but the receiver cannot maintain such an action.

6. A petition which charges an unlawful conspiracy without alleging a wrongful act, does not state a cause of action.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Reversed and dismissed.*

JAMES CARR and GEORGE D. REYNOLDS, for the appellant: Being an action by the receiver, in his own name, and for unliquidated damages, respondent cannot recover.— *Manlove v. Burger*, 38 Ind. 211 ; *Battle v. Davis*, 46 N. C. 255 ; *King v. Cutts*, 24 Wis. 625 ; *Freeman v. Winchester*, 10 Smed. & M. 577 ; *Yeager v. Wallace*, 44 Pa. St. 294 ; Rev. Stats. 1879, sects. 427–431, 744, 745, 3660–3662, 6043, 6044 ; *Hannah v. Moberly Bank*, 67 Mo. 678 ; *The State to use, etc., v. Gambs*, 68 Mo. 289. Sect. 41 of the insurance law, under which respondent was appointed, did not change the equity practice, nor is it inconsistent with the other statutory provisions. —*Relfe v. Commercial Ins. Co.*, 5 Mo. App. 173 ; *Relfe v. Spear*, 6 Mo. App. 129 ; *Thatcher v. Budd*, 6 Wheat. 119.

POPE & McGINNIS, W. L. SCOTT, and DRYDEN & DRYDEN, for the respondent : The decree dissolving the Columbia and appointing plaintiff receiver vested all the property and rights of action of the corporation in the plaintiff, and authorized him to sue for a recovery, and the same to pay its debts. This the court had the power to do ; and plaintiff can maintain a suit in his own name, not only because he is clothed with the legal title, and is trustee of an express trust, but because the court could and did expressly confer the power on him. — *Relfe v. Commercial Ins. Co.*, 5 Mo.

App. 173 ; *Relfe* v. *Spear*, 6 Mo. App. 129 ; *Miles* v. *Davis*,
19 Mo. 414 ; Bliss on Code Pl. 54. "A receiver of an in-
solvent corporation may repudiate the illegal transfer of
its securities by its officers, and claim them as part of its
fund." — *Talmage* v. *Peel*, 7 N. Y. 328 ; High on Rec.,
sect. 320.

LEWIS, P. J., delivered the opinion of the court.

The petition in this cause is as follows : —

" Plaintiff states that on October 1, 1875, the Life Asso-
ciation of America was and still is a corporation, duly organ-
ized under the laws of Missouri, and was and is engaged
in the business of insuring the lives of individuals, with its
principal office in the city of St. Louis.

" That prior to October 1, 1875, the St. Louis Life In-
surance Company was likewise a corporation, duly organized
under the laws of Missouri, and engaged in the same business,
and was also located in St. Louis. On January 28, 1876,
said St. Louis Life Insurance Company was reorganized in
pretended conformity to the laws of Missouri, and its name
was changed to the Columbia Life Insurance Company. Said
St. Louis Life Insurance Company and said Columbia Life
Insurance Company each had a capital stock of $1,000,000,
and were one and the same corporation, having the same
assets, and subject to the same liabilities.

" Plaintiff further states that on the — day of October,
1875, said Life Association of America and defendant Davis
entered into a combination and conspiracy, the chief purpose
of which was to give said Life Association of America con-
trol of the management and of the business, and to obtain
possession of, and to use, appropriate, and waste the assets
of said Columbia Life Insurance Company.

" In furtherance of the objects of said combination and
conspiracy, said Life Association of America and said Davis
on November 23, 1875, executed an agreement in writing,
wherein it was stipulated and agreed, among other things, in

substance, that said Life Association should furnish to said Davis its drafts, afterwards fixed at $1,111,898.34, drawn by its president (defendant Hough) on said Life Association and accepted by it, payable to said Davis at one day's sight, and a large amount of money, afterwards fixed at $130,401.66. With said draft and money, and in exchange therefor, said Davis was to procure and assign to said Life Association a large amount of the capital stock of said Columbia Life Insurance Company, not to be less than 9,400 shares, of the par value of $940,000.

"And it was further provided in said contract, and was part of said combination and conspiracy, that Davis should procure from said Columbia Life Insurance Company $1,137,233.54 of the real estate and collateral loans, bills receivable, stocks and bonds, then constituting a part of the assets of said Columbia Life Insurance Company.

"A copy of said agreement between said Life Association and said Davis is hereto annexed, marked ' Exhibit A,' and made part thereof.

" In pursuance of the objects of said combination and conspiracy, and in pretended compliance with the terms of the written agreement aforesaid, said Life Association did deliver to said Davis its draft for $1,111,898.34, and cash to the amount of $130,401.66, and with the same, and in exchange therefor, said Davis did procure for and assign to said Life Association 9,663 shares of the capital stock of said Columbia Life Insurance Company, and afterward, to wit, on December 10, 1875, said Davis and said Life Association obtained possession of said securities, constituting part of the assets of said Columbia Life Insurance Company, as aforesaid, which were of the value of $1,137,233.54 ; and in lieu of said securities said Davis and said Life Association delivered to and left in the possession of said Columbia Life Insurance Company the said draft of said Life Association of $1,111,898.34, duly indorsed by him (said Davis).

" On December 31, 1875, said Davis and said Life Asso-

ciation, in further pursuance of said combination and conspiracy, obtained from said Columbia Life Insurance Company the possession of said draft for $1,111,898.34, and held the same until February 1, 1876, when they returned it to said Columbia Life Insurance Company in the form of three drafts of said Life Association, drawn, accepted, made payable, and indorsed in the same manner as the original. One of the said substituted drafts was for $900,000, another was for $67,300, and the third was for $114,598.34.

"In further prosecution of said combination and conspiracy, said Davis and said Life Association had previously, to wit, on the 10th and 11th of December, 1875, procured the resignation of all the directors of said Columbia Life Insurance Company, and caused the directors, officers, and agents of said Life Association to be elected to the places thus made vacant, whereby defendants Hough, Coste, Fox, Douglass, Kennett, Loker, Dodd, Britton, Bryant, Obear, Stannard, Maxon, and Spaunhorst became directors of said Columbia Life Insurance Company, and its assets aforesaid passed into the possession and under the control of said Davis and said Life Association. Plaintiff cannot give a particular description of said assets, because they are not accessible to him.

"Said directors, and officers, and agents of said Life Association having thus been elected, and assuming to act as directors of said Columbia Life Insurance Company, on the — day of February, 1876, yielded up to said Davis and to said Life Association, on their demand, said draft for $900,000, and said Life Association, in pretended exchange therefor, delivered up and transferred to said Columbia Life Insurance Company 9,000 shares of the capital stock of said Columbia Life Insurance Company procured by defendant Davis as aforesaid.

"By means of said combination and conspiracy, and of the acts done in pursuance thereof as aforesaid, said Columbia Life Insurance Company was deprived not only

of the securities as aforesaid, but also of said draft for $900,000, and the same were entirely lost to said company, and said company received therefor nothing of any real value, and nothing of any pretended value, except the pretended transfer of its capital stock, which stock was entirely worthless, both because it had not been paid up and because said company was, and long before said combination and conspiracy were formed, had been hopelessly insolvent, all of which facts were well known to all of the defendants.

"Before said combination and conspiracy were formed, and during the entire time when the assets of said Columbia Life Insurance Company were being used, appropriated, and wasted as aforesaid, defendant Davis occupied a relation of trust and confidence toward said company, in this: that he was a member of its board of directors until November 30, 1875, and was its regular salaried attorney and confidential legal adviser until August, 1877, and it was well known to all of the defendants, during the entire time of the transaction aforesaid, that said relation of trust and confidence existed between said Davis and said company.

"On the — day of August, 1877, plaintiff was appointed receiver of said Columbia Life Insurance Company by decree of St. Louis Circuit Court, in a cause in said court pending, in which W. S. Relfe, as superintendent of the insurance department of Missouri, was plaintiff, and said company defendant; and by a further decree, duly rendered on October 18, 1877, said Columbia Life Insurance Company was dissolved, and plaintiff, as its receiver, was authorized and required to sue for and recover all the assets of said company, of every kind and character. Plaintiff is duly qualified, and acting under and by virtue of the decrees aforesaid, which remain unreversed and of full force in said court."

For the "fraud and waste, damage, and injury aforesaid,

plaintiff prays judgment against all' the defendants for $1,137,233.54, and for all further relief."

Before final determination the cause was dismissed as to some of the defendants, and the finding of the court was in favor of others, so that there remained only the defendant Relfe, representing the Life Association of America, against whom a judgment was rendered in plaintiff's favor for $1,099,200 damages.

The first question raised by the appellant for our determination is as to the respondent's right to maintain this suit. Objection was made in the court below against the introduction of any testimony on the part of the plaintiff, on the ground that he had no standing in court. A motion in arrest of judgment was filed at the proper time, averring, among other causes, that " the facts set forth in the petition show that the plaintiff could not maintain his said action." The objection was overruled in each stage of the proceedings.

All the authorities agree that under the ancient chancery procedure, as it has existed in this country without statutory modification, a receiver, as such, has no authority to institute a suit for the recovery of property which he has failed to reduce into possession, unless by order or leave of the court or judge who appointed him. Even then the action must be brought in the name of the party in whom the legal right or title to the property to be recovered is vested. The receiver is regarded as a mere custodian, and not as having any legal right to the property. He is not a trustee of any express trust, but is an officer of the court, appointed for the safe-keeping of money or property which the court itself has taken in charge for ultimate distribution among those who may be entitled, according to their several and respective rights, as finally developed in the cause. *Yeager* v. *Wallace*, 44 Pa. St. 294; *Manlove* v. *Burger*, 38 Ind. 211; *Battle* v. *Davis*, 66 N. C. 252. In New York and some other States the traditional powers of receivers have been

greatly enlarged by statute, especially in regard to the institution of suits in their own names and at their own discretion, for the collecting and preserving of the property committed to their charge. The causes referred to by plaintiff's counsel, in which receivers were sustained in suits commenced in their own names, and without special leave, were decided under the operation of such statutes, or were controlled by special circumstances which do not exist in the present case. When a receiver by actual possession has acquired a special property in an article wrongfully taken from him, his right to sue for its recovery is governed by considerations foreign to the present inquiry. The petition in this case alleges that in the decree whereby the plaintiff was appointed receiver of the Columbia Life Insurance Company, he was "authorized and required to sue for and recover all the assets of said company, of every kind and character."

Upon the principles above defined, this decree would be no sufficient authority for the present suit, which is brought by the receiver in his own name. Even if the decree could be construed as directing a suit in the receiver's name, its validity in that particular would be far from certain. The right or title in the thing to be sued for remains where it was before the receiver's appointment. Can such an order of appointment be made to divest the right or title, and vest it in a new owner, without authority expressly given by some statutory enactment or settled rule of law? It was held in *Hannah* v. *Moberly Bank*, 67 Mo. 678, that the decree could not confer upon a receiver appointed under the execution-law greater powers than were given him by the statute. The rule would seem to apply quite as well to powers which are clearly defined by established law, independently of any special statute. When no statute has intervened, the law which withholds from a receiver any right, title, or trust, by virtue whereof he might sue in his own name, is as well established and of controlling authority

derived from both settled usage and legal necessity, as if it were embodied in the statutes.

It follows from what has been said that this suit was improperly begun by the receiver in his own name, unless it can be shown that the proceeding was authorized by some statutory provision of Missouri.

By the law regulating attachments (Wag. Stats. 187, sects. 30, 31) it is provided that " the court, or in vacation the judge, may, in a proper case, on the application of the plaintiff, appoint a receiver. * * * When notes, bill-books of any account, accounts, or other evidences of debt are attached, they * * * shall be delivered to the receiver, who shall proceed with diligence to settle and collect the same. For that purpose he may commence and maintain actions on the same, in his own name," etc. Under the execution law (Wag. Stats. 606, sect. 20), " all account-books, accounts, notes, bills, bonds, certificates of deposit, and other evidences of debt belonging to a debtor," may be placed in the hands of a receiver, who shall " have and perform the same powers and duties * * * as in the case of a receiver and his securities appointed in virtue of the statute providing for suits by attachment." By the Practice Act (Wag. Stats. 1048, sects. 52, 53), " The court shall have power to appoint a receiver whenever such appointment shall be deemed necessary to keep or preserve any money or other thing deposited in court, or that may be the subject of a tender, subject to the order of the court. Such receiver shall give bond, and have the same powers, and be subject to all the provisions, as far as they may be applicable, enjoined upon a receiver appointed in virtue of the law providing for suits by attachment." These are all the existing statutes relating to receivers and their powers, excepting that contained in the insurance law. Wag. Stats. 753, sect. 41. None of them, with the exception mentioned, can be properly applied to the present case. The first two enactments are provided for special classes of

cases, to which this does not belong. That the third is inapplicable, also sufficiently appears in *The State ex rel.* v. *Gambs*, 68 Mo. 289, where it is held that these provisions were intended for the "appointment of receivers in all cases not otherwise specially provided for." It follows that they are not to be applied in cases which are "otherwise specially provided for." This is in obedience to a settled rule of interpretation. In *Relfe* v. *Insurance Company*, 5 Mo. App. 173, it was shown by this court that an insurance company cannot make a valid voluntary assignment of its property, and thus withdraw itself from the control of the insurance department, when it has become answerable to that department by a violation of the insurance laws. The logic of the proposition is that the State, having by a special law provided for a settling up of the affairs of an insurance company in failing or delinquent circumstances, such a corporation cannot avail itself of any general law whose operation would supersede or evade the provisions of the special law. True, the insurance law is general, in that it governs all insurance corporations in the State; but it is also special, in that its operations are exclusively confined to those companies. The same reasoning directs our attention to the provision in the insurance law for the appointment of receivers appointed thereunder, and to their powers and duties. In so far as those powers and duties remain undefined, the term "receiver" must be understood as describing the officer with his functions and attributes, as he was known by that title in the ancient chancery practice. In the insurance law, the provision under which the plaintiff in this case was appointed is in these words: "The court or judge may, at any time after the filing of the petition, appoint agents or receivers to take possession of the property of said company." Wag. Stats. 753, sect. 41. Nothing is added in the act in definition of the powers of such agents or receivers. It follows that their authority, without some extension by lawful order of the court, stops

at the taking possession of the property, or at least at the common-law limits prescribed for such officers. We have shown that within those limits the institution of the present suit cannot be sustained.

These views, without further inquiry, necessitate a reversal of the judgment rendered in the court below. It is proper to add, however, that even if we could recognize a right in the plaintiff to sue, we should fail to find in the petition before us any sufficient statement of a cause of action.

The petition apparently undertakes in the outset to cast a tinge of fraud and wrong over all the transactions to be subsequently detailed, by averring that the Life Association and defendant Davis "entered into a combination and conspiracy, the chief purposes of which were to give said Life Association of America control of the management and of the business, and to obtain possession of, and to use, appropriate, and waste the assets of said Columbia Life Insurance Company." The charge of combination and conspiracy cannot of itself constitute a cause of action, however unlawful may be its purposes. It must be coupled with some unlawful or wrongful act to make it available. Any amount of conspiring to burn A.'s house will not give him an action for damages until the act is done or attempted, and some real injury sustained. Even if the act conspired about be consummated, and result in detriment to a third party, there will be no right of action if the act be one which the conspirators had a lawful right to perform in their own interest or pleasure. *Hunt* v. *Simonds*, 19 Mo. 583. Moreover, let the objects and purposes of a conspiracy be ever so unlawful and harmful, yet if the act done in pursuance thereof be absolutely innocent and lawful, there can be no ground of complaint in law. If A. and B. combine to poison C., he cannot pursue them in damages for having administered, by mistake or accident, a common or wholesome edible instead of the poison. In short, the

law takes cognizance of acts and their consequences, but not of intentions, unless, the act being found unlawful and injurious, the intention may serve to show that it was done without excuse.

Let us suppose, as the plaintiff seems to assume, that a fair interpretation of the law will give the plaintiff a right to sue in his own name, in matters pertaining to his receivership, as incidental to his appointment and qualification. He will then appear as the representative of the Columbia Life Insurance Company in its corporate capacity. He is in no sense a representative of stockholders or creditors in their individual rights and interests. They were not parties to the proceeding in which he was appointed, and their rights and interests may be in antagonism with those claimed for the corporation as such. His suit, then, must be such a one as the corporation itself might institute if its functions were not suspended for the time being.

The acts done in this case, according to the petition, "in furtherance of said conspiracy," consisted of a series of transfers and exchanges of property, no one of which is shown to have been beyond the powers of the contracting parties, or violating any law. It is not alleged that any fraud, misrepresentation, concealment, or duress was present in any of the transactions. The stock of the Columbia was "procured" by Davis; but it is not stated that he got possession of it by any fraudulent or wrongful means. So of all the other transactions. The first directors of the Columbia had a perfect right to resign their positions, whether by procurement, as set forth in the petition, or otherwise; and the holders of a majority of the capital stock had an equal right to choose whom they would to fill their places.

The purchase of assets with a draft on the Life Association, duly accepted, the substitution of other drafts for this, and the final exchange of one of the drafts for a nomi-

nal equivalent in stock of the Columbia — all these were, as they appear in the petition, simple business transactions, such as occur daily in the world of trade. The Columbia, it is alleged, came out a loser. But that fact furnishes no ground for relief against contracts which it deliberately entered into with its corporate eyes open, and with full opportunity to form its own judgment as to possible results.

It is, of course, possible that in the transactions mentioned a wrong was perpetrated against stockholders and creditors of the losing corporation. But if this be true, it is equally true that the corporation itself, through its authorized officers and agents, was a willing and active party in the performance. It would be necessary, therefore, for the corporation to sue itself if it proposed to reach all the perpetrators of the alleged wrong. The facts stated in the petition, taken altogether, may be sufficient to raise a strong suspicion, if not a conviction, that somebody was wronged. But in this view those facts are merely incidental, and not causes of action. If it was by collusion between the original directors of the Columbia and those of the Life Association that the former surrendered their positions to the latter, and thus willingly opened the door to that dual control which was to enable the officers of the Life Association to depose the stockholders and creditors of the Columbia, the more rational avenue to reach this would seem to lie in a proceeding by the injured stockholders and creditors against all or any of the parties by whom the spoliation was effected or promoted. A suit by a receiver, as is already shown, cannot present in any shape the claims of stockholders and creditors thus entitled to redress.

With the concurrence of all the judges, the judgment is reversed and the cause dismissed.